In the Matter of the Application of THE CITY OF NEW YORK, Relative to Acquiring Title, etc., to the Lands, Tenements and Hereditaments Required for the Opening and Extending of Eastern Boulevard, from the Property of the New York, New Haven and Hartford Railroad to Hunts Point Road, in the Twenty-third Ward, Borough of The Bronx, City of New York, as Amended by a Resolution of the Board of Estimate and Apportionment Adopted on the 20th Day of April, 1911, and by an Order of this Court Bearing Date the 29th Day of December, 1911, and Entered in the Office of the Clerk of the County of New York on the 3d day of January, 1912, so as to Omit from Said Proceeding that Portion of the Said Eastern Boulevard, between Truxton Street and the Property of the New York, New Haven and Hartford Railroad.

THE CITY OF NEW YORK, Appellant; CHURCH E. GATES & COMPANY and Another, Respondents.

First Department, June 13, 1930.

*Patrick S. MacDwyer* of counsel [*Joel J. Squier* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the appellant.

*Thomas C. Blake* of counsel [*E. L. Barnard,* attorney], for the respondent Church E. Gates & Company.

*Ralph L. Baldwin* of counsel [*Trapnell & Baldwin,* attorneys], for the respondent East Bay Land Company.

FINCH, J. This proceeding involves some interesting questions in the law of real property which have troubled the parties concerned for a long time. It was commenced in October, 1907, by a petition of the city of New York, pursuant to which commissioners were duly appointed herein, to acquire title to Eastern boulevard from the property of the New York, New Haven and Hartford railroad to Hunts Point road. Questions arose concerning the title to two parcels of real property known as damage parcels 6 and 6-a, which form the bed of that part of Eastern boulevard which extends from the westerly side of Truxton street to the westerly side of Tiffany street, this latter line marking the original low-water line of Leggett's creek, where it widened out as it approached what was then called Long Island sound and now the East river. The parties start with the premise that the *locus in quo* originally was part of the lands included in the manor of Morrisania. Title to this runs from a royal patent of May 6, 1697. Lewis Morris, in 1740, conveyed a large tract, including the *locus in quo*, to his son-in-law, James Graham, which tract so conveyed ran to low-water mark. Upon the death of James Graham, his executors conveyed to his son and daughter, John and Arabella, by deed dated August 12, 1797. John and Arabella undertook to partition this property by mutual deeds dated May 3, 1804. Arabella subsequently conveyed certain premises to one Ludlow and thereafter Ludlow's property became vested in one Leggett. John conveyed to one Fleming and Fleming conveyed to the same Leggett. Leggett conveyed the tracts which he had received from Arabella and John to one Whitlock. Through mesne conveyances it is claimed that parcels 6 and 6-a became the property of the East Bay Land and Improvement Company (hereinafter called East Bay) on April 28, 1890. Following a suit between the city of New York and the East Bay, a judgment was entered December 1, 1899, upon consent, which decreed that the city of New York was the owner of these parcels, to be held in trust for street purposes. The claim to title

on the part of the city of New York rests in this proceeding upon said judgment dated December 1, 1899.

The claimant Church E. Gates & Company (hereinafter called Gates) bases its claim of title to parcel 6 and the East Bay to parcel 6-a upon quitclaim deeds from the heirs of Arabella Graham, which were obtained some years after the entry of the judgment dated December 1, 1899. Consequently, in order to sustain its title, Gates has endeavored to show that the title was originally in Arabella and did not pass from her to Ludlow and, therefore, went to the heirs of Arabella and passed by quitclaim deeds to Gates.

The commissioners first appointed made an award to Gates of $34,000 as the owners of damage parcel 6. Upon the motion to confirm the report of the commissioners, the city opposed upon the ground that it was entitled to the property because of an estoppel based upon the judgment of December 1, 1899. Gates thereupon contended that if that objection had been raised before the commissioners, it would have been in a position to introduce testimony showing that the four parcels of land and salt meadow conveyed in the deed from Arabella Graham to Ludlow did not include the land in question. The court thereupon sent the matter back to the same commissioners to receive testimony which might be offered by the parties and to make an award in accordance with such testimony. Upon the new hearing Gates put in evidence maps concededly made fifty years or more subsequent to the conveyance by Arabella Graham to Ludlow and then introduced testimony of an employee of a title company that from the description in the deeds and these maps the parcel, in his opinion, was not included. A surveyor also was called, who, from the same data, gave an opinion to the same effect. The learned court clearly pointed out that this evidence was entirely incompetent as a basis upon which to pass title. The maps were not referred to in the deed of Arabella Graham and, in consequence, could not be resorted to as showing artificial monuments. Neither were they proved to be maps of a large tract which had been so generally and publicly recognized as correct as to afford reasonable grounds for the presumption that property owners, in making their conveyances, had used the boundaries and measurements indicated upon the map; nor were they ancient maps kept by public officials, as in *Donohue* v. *Whitney* (133 N. Y. 178). The facts upon which the person making the map relied for the courses, monuments and distances were not proved, and hence the map had no probative value. The testimony of the so-called experts based upon these speculative maps was, of course, incompetent. The report of the commissioners was thereupon set aside and new commissioners were appointed.

Upon the next hearing the city of New York, which up to this time had relied upon its claim of title coming from Arabella pursuant to the partition with her brother John, discarded this claim entirely and sought to show that in partition the *locus in quo* passed to John instead of Arabella. The city introduced in evidence a map made in 1859 and employed by Whitlock in his application that year for a grant of land under water. Then a city engineer testified that, in his opinion, from the description in the partition deeds of 1804 and this map made in 1859, he was able to conclude that parcel 6 was covered by the deed from Arabella to John. Whether this map and the evidence based thereon was competent it is not necessary now to consider since the commissioners were bound by the opinion of Mr. Justice PAGE holding that title was in Arabella subject only to the question as to whether or not it had passed from Arabella in her deed to Ludlow. In sending back the report to new commissioners Mr. Justice PAGE directed them to make a report in accordance with his opinion. In the absence of an appeal the order of Mr. Justice PAGE holding title to have passed to Arabella upon the partition between her brother John and herself, became the law of the case and binding upon the commissioners. (*Barber* v. *Rowe*, 200 App. Div. 290, 294, 295; *Powers* v. *City of New York*, 194 id. 912.)

Assuming, however, that the map and testimony based thereon are competent, yet, as well pointed out by the learned court at Special Term, the conclusion of the witness in reconstructing a basic line and locating the property of the claimant in reference thereto, produced such incongruous results as to justify the court in disregarding the testimony.

Another real difficulty surrounding the claim for this damage parcel lies in the fact that as yet there has been discovered no competent evidence upon which may be predicated what was the nature of this property, that is, whether land under water or upland, at the time of the partition between John and Arabella or at the time of the conveyance from Arabella to Ludlow. If at the date of this conveyance the land was then under water, it would pass under the word " appurtenant; " but if it was upland, it must be within the bounds of the description. Land cannot pass as appurtenant to land except in the case of land under water. (*Woodhull* v. *Rosenthal*, 61 N. Y. 382; *Ogden* v. *Jennings*, 62 id. 526.) The evidence is lacking to determine where the upland known as the hummock terminated on its course towards the salt marsh and land under water, where parcel No. 6 was at one time situated. Furthermore, since so many of the monuments referred to in the old deeds have became obliterated, it is impossible to tell whether, if

the *locus in quo* was then upland, it was included within the boundaries of the tracts described. Disregarding for the moment the binding effect of the holding of Mr. Justice PAGE, we are without evidence other than that these parcels passed from Lewis Morris to his son-in-law, James Graham, and from him to his son and daughter, John and Arabella Graham, who held the same in common.

Since the city of New York has relied upon an estoppel based upon the judgment of December 1, 1899, a word in reference thereto is appropriate. It is clear that the city has no title through an estoppel created by reason of the judgment entered December 1, 1899, as against Gates and the East Bay. The city has endeavored to rely upon this judgment to create such an estoppel as would flow at common law from a prior voluntary conveyance. Such contention of the city was correctly overruled at Special Term. As to the rights of the parties and their privies upon the facts existing at the time of the entry of the judgment, that judgment is final and conclusive. It was not, however, conclusive as to the rights of the heirs of Arabella Graham, which had been acquired by these heirs years before the entry of this judgment and who were not parties to this action nor upon the assignees of these rights. As was said in *Dawley* v. *Brown* (79 N. Y. 390, at p. 398): " It is not the former recovery which constitutes the estoppel. It is the decision of the question which was in contestation between the parties, and the estoppel rests, in ejectment as well as in other cases, upon the familiar principle that when the same point has been litigated between the same parties, and decided by a court of competent jurisdiction, it cannot be again called in question. (*Bank* v. *Bridges*, 11 Rich. [S. C.] 87.) The same principles apply to defenses as to the plaintiff's title, and a former judgment does not deprive the defendant of the right to set up a subsequently acquired title as a defense. (*Mann* v. *Rogers*, 35 Cal. 316.) "

The basis of the claim of adverse possession is not sufficiently substantial to warrant discussion.

The East Bay upon this appeal files no brief except a statement that it acquiesces in the brief of the city of New York and has contended from the beginning that both of these parcels were duly vested for street purposes in the city of New York. It, however, urges that both parcels are in the same category and that if either of the two parcels is entitled to a substantial award, then the East Bay desires also to claim a substantial award. The reason for this position taken by the East Bay does not appear, but can be ascertained upon the hearing, when such disposition may be made of the claim of the East Bay as the evidence shall then warrant.

Upon this appeal Gates, though claiming the entire interest,

acquiesces in the decision at Special Term awarding to it as owner an undivided one-half. In its brief presented to the court it says: " We realized the difficulty of showing by competent testimony the exact boundaries of the plots conveyed to Ludlow, and we expressed a willingness to take the interest, that then appeared to be conceded, in an effort to end a very protracted litigation." Because of this acquiescence by Gates we affirm the decision at Special Term with a slight modification. Otherwise under the opinion of Mr. Justice PAGE we would hold the title to have been in the heirs of Arabella and to have passed from them to Gates. The learned court at Special Term referred the matter to new commissioners. In this minor particular the order should be modified. In view of the numerous hearings heretofore had before commissioners and the length of time already consumed in this matter, which it is only fair to say is not due to the court, the order appealed from should be modified by referring the matter to Special Term to be there dealt with in accordance with this opinion.

MERRELL and SHERMAN, JJ., concur; DOWLING, P. J., and MARTIN, J., dissent.

MARTIN, J. (dissenting). I dissent. I am of opinion that the report of the commissioners which found damage parcels No. 6 and No. 6-a to be in the ownership of the city of New York, should be affirmed, and that the order which denies the confirmation and returns the report to new commissioners to make a report is erroneous and should be reversed.

DOWLING, P. J., concurs.

Order modified by referring the matter to Special Term to be there dealt with in accordance with opinion. Settle order on notice.