JOYCE RITCH, Special Assessor of Morrow County, Oregon, *v.* C. H. MACK, Director, DEPARTMENT OF REVENUE

Herman W. Winter, District Attorney for Morrow County, Heppner, represented plaintiff.

Donald C. Seymour, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision for plaintiff rendered November 18, 1970.

WILLIAM W. WELLS, Judge pro tempore.

The Director of the Department of Veterans Affairs for the State of Oregon has made application for special assessment for the 1969-1970 assessment year as unzoned farm land, 94,366 acres of real property owned by it in Morrow County and leased to The Boeing Company, a Delaware Corporation. The Morrow County Assessor rejected the application and the matter was appealed to the Department of Revenue. The department overruled the assessor and held that the land was entitled to the special assessment. The assessor now has appealed the department's order.

On July 2, 1963 a lease was consummated with Boeing for use of this large block of state land as a Space Age Industrial Park. Highway 80N severs from the remainder of the tract the northerly 3707.8 acres adjacent to the Columbia River. Approximately 2261 acres of this parcel were acquired from the United States of America which retained a perpetual overflow easement to accommodate fluctuating water level of the John Day Dam pool, together with the right to construct, operate and maintain navigation markers and aids incident to the John Day Lock and Dam project. The instrument conveying title to this portion of the property required the State of Oregon to develop the land for port and industrial purposes within twenty years from the date of the deed, substantially in accordance with the plan of development entitled "A Water Front Plan For The Boardman Space Age Industrial Park" which is on file in the office of the District Engineer in Walla Walla, Washington. In

event the grantee used the land for other than port and industrial purposes or failed to develop port and industrial facilities as required by the "Water Front Plan" then all right, title and interest to the land conveyed reverted, at its option, to the United States. No provision is made in the Water Front Plan for any agricultural use of the property. The deed further provided that any failure of the United States to serve notice of a breach of any condition imposed by the conveyance was not to be considered as any waiver or relinquishment of the reversionary rights.

The Boeing lease from the State of Oregon is subject to the condition that the lessee will make use of the premises primarily for industrial or industrial research or for developmental purposes. Failure to do so subjects the company to the risk of the State's termination of the lease. The instrument provided, however, that while the company's primary industrial or industrial research or developmental effort was concentrated in only a portion of the premises the company would be permitted to minimize fire hazard or to accommodate neighboring grazing or agricultural interests by permitting sheep to graze and agriculture to be practiced on another part or parts of the premises.

In event the leased premises are not used by Boeing for the purposes for which the lease was negotiated, the State of Oregon retains the unilateral right to terminate the lease. No notice of intent to terminate the lease has been given to Boeing because of any failure to use the premises in the manner prescribed by lease.

All of the water front property acquired from the United States of America is included within a 2570 acre sublease to Joseph M. Tatone and Alice H. Tatone

for grazing purposes. Two other large portions of the Boeing tract are leased to Shirley Rugg and to Hynd Brothers' Company, Inc. for similar use. In addition approximately 960 acres have been leased to Ira F. Barnett for utilization for the growing of grains. It is for these four parcels that the State of Oregon seeks the farm use special assessment.

Article III (6) of the Boeing lease provides that the state shall not be entitled to any sub-rental payments in any calendar year until the company shall have first recovered an amount equal to the annual adjusted basic rental for that year. The total payments received from subleases have not yet reached that level, so the State of Oregon receives no income from farm usage.

ORS 308.370 (2) provides:

"(2) Any land which is not within a farm use zone but which is being used, and has been used for the preceding two years, exclusively for farm use as defined in subsection (2) of ORS 215.203 shall, upon compliance with ORS 308.375, be assessed at its true cash value for farm use and not at the true cash value it would have if applied to other than farm use. *However, the provisions of this subsection shall not apply to any land with respect to which the owner has granted, and has outstanding, any lease or option to buy the surface rights for other than farm use.*" (Emphasis supplied.)

The testimony disclosed that one of the reasons advanced by Boeing for needing such a large isolated area was to create a buffer zone for noise suppression between its test areas and privately owned property adjacent to the industrial park. All of the subleases contain a provision that the sublessee's possession is not exclusive and Boeing retains the right of access

to and possession of the premises at all times. Recognizing its industrial and developmental needs, the sub-leases provide that Boeing's use or intended or desired use shall be paramount, and the sublessee's use of the premises must be made compatible therewith. Boeing retains the right of exclusive possession of all of the premises that it might from time to time require and in particular reserves the right to terminate the lease at any time without notice, regardless of any lack of breach of any of the terms of the lease by the said sublessees. These provisions are not to be found in the customary farm lease.

■ The purpose of the special farm use assessment classification was to give tax relief to owners of farm lands who were using their property for that purpose and to retard the diversion of agricultural land to other uses. A review of all of the written documents compels the court to conclude that the present farm use of the land is merely incidental to that to which it is primarily devoted. In furtherance of its efforts to comply with the dictates of its lease, Boeing has prepared and circulated throughout the United States a brochure inviting subleases on 100,000 acres for industrial or manufacturing sites or large hazardous storage areas. The owner, who is now claiming the privilege of special assessment, has to this date received no income attributable to grazing or farming operations. Neither the owner, nor Boeing as lessee, have ever participated in any government agricultural or range management programs nor engaged in farming operations in any manner. The rent being paid to the owner arises solely from the lessee's industrial and research use.

■ In order for an owner to qualify for assessment

for farm use it is reasonable to conclude that the owner must ultimately receive compensation, in some form, from farming or grazing operations.

ORS 215.203 (2) (b) provides:

"* * * farm use land shall not be regarded as being used for the purpose of obtaining a profit in money if the whole parcel has not produced a gross income from farm uses of $500 per year for three of the five calendar years immediately preceding the assessment day of the tax year for which farm use is claimed by the owner or allowed by the assessor * * *."

In the owner's application for special assessment it stated only an estimate of the gross income for the preceding five years. It was apparently unaware of the amount attributable to farm operations received by Boeing.

The property tax regulation adopted by the Department of Revenue pursuant to ORS 308.380 lists twenty-three criteria which may be considered by the assessor in reaching a conclusion as to whether the use of a particular parcel of land qualifies as farm use land. Only about half of the items on that list would apply to the property in question. It is thus apparent that the land is being used generally for other than farm use. What agricultural use being made of the property is merely incidental to its primary application.

■ After consideration of all of the evidence it is apparent that the restrictions contained in the written conveyances and leases clearly fall within the exception contained in ORS 308.370 (2) which prevents farm use classification to that "land with respect to which the owner has granted, and has outstanding,

any lease * * * for other than farm use." It is not necessary to determine any subjective intent which Boeing and the state entertained as to the proposed use of this property. It is clearly delineated in the written documents.

The order of the director will be reversed.