WILLIAM J. and DOROTHY G. LINFOOT *v.*
DEPARTMENT OF REVENUE

William J. Linfoot, Salem, represented plaintiffs.

Ira W. Jones, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered July 27, 1971.

CARLISLE B. ROBERTS, Judge.

This is an appeal from the Department of Revenue's Order No. VL 70-49, dated February 6, 1970, affirming the Marion County Assessor's denial of a special assessment for "farm use" under the provisions of ORS 308.370 to 308.395 for the tax year 1969-1970.

The plaintiffs are owners of three pieces of real property which total 71.56 acres, purchased at different times. The piece in dispute, described as Assessor's Account No. 18819-000, containing 21.56 acres,

is located approximately four miles south of the City of Salem, Oregon, adjacent to the Joryville Park. In addition to the 21.56 acres, the plaintiffs own a 30-acre tract and a 20-acre tract, separated from each other by a county road, located in the Rosedale District and approximately two and a half miles easterly of the subject property. The Marion County Assessor recognized the qualification of the 30-acre and 20-acre tracts in the Rosedale area for special farm use assessment, denying the plaintiffs' application only for the 21.56 acres. The 30-acre tract produced prunes and the 20-acre tract produced holly and cherries. In the subject property, 15 acres are in small conifers, oak and secondary growth. The plaintiffs contend that this part of the tract constitutes a woodlot "appurtenant to farm use land" within the purview of ORS 215.203 (2)(c). The remaining 6.56 acres are in grass and, for several years, including the year in question, they were leased to a neighbor for $75 a year, being used by the lessee as pasture for personal riding horses.

ORS 308.375 specifies the form of application which must be made to obtain the special assessment of land for property tax purposes under subsection (2) of ORS 308.370 as "farm use" property. "Farm use" is defined in subsection (2), paragraphs (a), (b) and (c) of ORS 215.203, the pertinent parts of which read:

"(2) (a) As used in this section, 'farm use' means the current employment of land for the purpose of obtaining a profit in money by raising, harvesting and selling crops or by the feeding * * * of, livestock, * * * or any other agricultural or horticultural use or animal husbandry or any combination thereof. * * *

"(b) Except as limited by paragraph (c) of this subsection, farm use land shall not be regarded as

being used for the purpose of obtaining a profit in money if the whole parcel has not produced a gross income from farm uses of $500 per year for three of the five calendar years immediately preceding the assessment day of the tax year for which farm use is claimed by the owner or allowed by the assessor, notwithstanding that such land is included within the boundaries of a farm use zone. In case of question, the burden of proving the gross income of a parcel of land for the years designated in this paragraph is placed upon the owner of the land.

"(c) 'Current employment' of land for farm use includes (i) land subject to the soil-bank provisions of the Federal Agricultural Act of 1956, as amended (P. L. 84-540, 70 Stat. 188); (ii) land lying fallow for one year as a normal and regular requirement of good agricultural husbandry; (iii) land planted in orchards or other perennials prior to maturity for bearing crops; and (iv) farm wood lots of less than 20 acres appurtenant to farm use land which fulfills the requirements of paragraph (b) of this subsection. The acres of land within the categories described in this paragraph shall not be subject to the requirements of paragraph (b) of this subsection."

ORS 215.203 (2)(b) provides that "farm use land shall not be regarded as being used for the purpose of obtaining a profit in money if the *whole parcel* has not produced a gross income from farm uses of $500 per year for three of the five calendar years immediately preceding the assessment date of the tax year for which farm use is claimed * * *." (Emphasis supplied.) In the "application for special assessment of unzoned farm land," Form 130, the Department of Revenue has provided a definition as follows:

"'Whole parcel', under ORS 215.203 (2)(b) above, means the farm land owned by the applicant(s) which comprises a bona fide farm opera-

tion. It may consist of noncontiguous land if such land is utilized as a part of the whole parcel."

The defendant concedes that the subject property could be a part of a "parcel" with the 50 acres above described which are in active farm operation if all conditions are met; however, the 6.56 acres of pasturage must be fully assessed because they are not being utilized to make a profit for the user, and the wooded area is "not appurtenant to the farming operation."

An examination of ORS 215.203 and other sections relating to the special taxation of agricultural land (ORS 308.345 to 308.395) indicates that the legislature was seeking to protect bona fide farm activities from the encroachments of a market which was constantly finding a "higher and better use" for the property (i.e., a use for which an investor was willing to pay a higher price than the sum on which he could expect to obtain a reasonable return through farming).

With regard to the 6.56 acres rented for use as a horse pasture, the Department of Revenue took the view that the use by the tenant, rather than that of the fee owner, is the activity to which consideration must be given under the statute for determining whether or not the land is being currently employed for the purpose of obtaining a profit in money, and there was no question that profit was not sought by the lessee in this instance, since he was maintaining the riding horses solely for his own pleasure.

■ The partial exemption granted by the statute requires that the actual use of the property be ascertained. There must be a current employment of land for the purpose of obtaining a profit in money through certain specified acts. The act of leasing the property is not one of them. The activity of the lessee must be

regarded as the use and the question must be asked, what is he using the property for? The testimony in the present case makes it clear that the lessee is not using the property for the purpose of obtaining a profit in money by the feeding, breeding, management and sale of, or the produce of, livestock. As stated in *Ritch v. Dept. of Rev.*, 4 OTR 206, 210-211 (1970):

> "In order for an owner to qualify for assessment for farm use it is reasonable to conclude that the owner must ultimately receive compensation, in some form, from farming or grazing operations."

The farming operation of leased agricultural property carried on by the lessee must be for the purpose of obtaining a profit in money. Even if the woodlot came within the provisions of the act and even if the subject property were considered as part of the "parcel" constituting the entire farm operation, it would be necessary to segregate the 6.56 acres of pasture land from the parcel as not coming within the provisions for farm use. *Spooner v. Dept. of Rev.*, 4 OTR 66 (1970).

The term "woodlot" or "farm woodlot" does not appear in the law dictionaries or in Words and Phrases but is found in Webster's New International Dictionary (2d ed):

> "Woodlot—a relatively restricted area devoted to the growing of forest trees;—distinguished from the general forest; as a farm woodlot."

This type of property has a special place in the "farm use" statutes. ORS 215.203, in subsection (2)(a), stresses the requirement that farm use requires the current employment of land for the purpose of obtaining a profit in money by raising, harvesting and selling

crops and the like. Paragraph (b) requires that this activity be sufficiently serious and continuous to produce a gross income from farm uses of $500 per year for three of the five calendar years immediately preceding the assessment day of the tax year for which farm use is claimed. But paragraph (c) makes allowance for four situations in which there either can be no expectation of monetary return or there is no current employment of the land or both. Among these four exceptions is the category "farm wood lots of less than 20 acres appurtenant to farm use land which fulfills [sic] the requirements of (b) of this subsection." There appears to be no question that if the 15 acres of woodlot in the subject property came within the boundaries of plaintiffs' Rosedale property, the assessor would continue to grant farm use status to that property. Is the application of the plaintiffs for farm use status to be rejected either (a) because this inactive land, deemed to meet the requirements of "current employment" as a special exception by legislative fiat, is not a part of the "whole parcel" constituting the farm operation, or (b) must it be rejected on the ground that the subject property is not "appurtenant to farm use land which fulfills the requirements"?

The evidence placed before the Marion County Assessor, the Department of Revenue, and this court shows that the plaintiffs make little use of the wooded area. They cut two to three cords of wood each year from the subject property, for use in their own home and in a shed on the 50-acre parcel (heated for use by the holly cutters during the harvest season when the temperature is low). A few years prior to the hearing, 300 to 400 fence posts were cut from the property for use in fencing it and for the orchard property. A few

tree props have been taken from it. It is clearly of minimal present utility.

As has been said, the intention of the legislature is to shield bona fide farm operations from higher valuation "attributable to urban influences or speculative purchases." See ORS 308.345 (1). Although a tract of land used in the farming operation need not be absolutely contiguous, it must be "currently employed" as a part of the "whole parcel" in one of the described uses set out in subsection (2)(a) of ORS 215.203. There was certainly no intention on the part of the legislature to use a bona fide farming operation as a screen to take out of the normal process of taxation one, two or more unimproved, wooded tracts (although totaling less than 20 acres) whose highest and best use is tending toward single-family residences. It is concluded that this inactive tract of wooded land cannot qualify as being part of the "entire parcel" unless it also meets the requirement of being "appurtenant to farm use land."

"Appurtenant" has long been a word of art but its use in the present context is somewhat confusing. The plaintiffs have argued that the term "appurtenant to farm use land" does not mean contiguous to farm use land but only that it is appropriate, suited, incident or belonging to farm use. The defendant cites the definition from Black's Law Dictionary (4th ed) which defines "appurtenant" as "belonging to; accessory or incident to; adjunct, appended, or annexed to; answering to *accessorium* in the civil law."

In its technical sense, in the case of land, the word "appurtenance" refers to an incorporeal right (e.g., water rights) or easement (e.g., a way) or to some improvement to the realty (e.g., buildings; growing crops), existing at the time of conveyance of the

property, which (although not described in the conveyance) would logically be deemed to pass with the land because the appurtenance is necessary to the use and enjoyment of the property conveyed. *Dill v. Killip,* 174 Or 94, 99-100, 147 P2d 896 (1944); Words and Phrases (Perm ed, 1953) 528 et seq. It is a generally accepted principle that land cannot be appurtenant to land. *In re Eastern Boulevard in Borough of Bronx, City of New York,* 243 NYS 57, 61, 230 App Div 52 (1930); *Snoddy v. Bolen,* 122 Mo 479, 24 SW 142, 144 (1894). A woodlot consists of "land," including its forest cover. Obviously, the drafters of ORS 215.203 (2)(c) did not use "appurtenant" as a word of art, a variant of "appurtenance," but in some more general sense of being "annexed" to or "belonging" to the more important farm use land. (See "appurtenant" in Webster's Third New International Dictionary (1961).) These words suggest contiguity of the woodlot to the farm use land, although they are not as definite as is desirable. However, taken together with the clear legislative intention to give special assessments only to land which is being used and actively operated in profit-motivated agricultural undertakings, the court finds that exempt farm woodlots must be surrounded by or border on the approved farm use land. A woodlot, separated only by a road or stream from the farm use land would be deemed to come within the requirements.

The policy established by the legislature is buttressed by such a conclusion. In this time of spreading urbanization and steadily increasing land values, there is no reason to reward the land speculator who, while operating a farm lacking woodlots, is tempted to pick up several small tracts describable as woodlots, remote from his farm operation and not essential to it,

for speculative purposes. (There is no suggestion that this was true as to the subject land, purchased by the plaintiffs more than 18 years ago. However, there was testimony that its value was being affected by urban sprawl.)

The Opinion and Order of the Department of Revenue is affirmed.