## W. J. MASTERS AND MARY C. MASTERS *v.* DEPARTMENT OF REVENUE

William J. Masters, Portland, represented plaintiffs.

Donald C. Seymour, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered October 18, 1972.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appeal from the Department of Revenue's Order No. VL 71-385, relating to Tax Lot 500 in T 2 S, R 1 W, Sec 9, WM, in Washington County, Oregon, designated as Department of Revenue and Taxation Account No. 23-9. The subject property consists

of 18.05 acres of land located in Washington County in an area zoned and currently undergoing development for residential use; 13.45 acres of the property had been planted with seedling trees; 4.60 acres have been described by the plaintiffs as farm woodlot. The plaintiffs accepted the assessor's valuation of a true cash value of $34,000 as of January 1, 1970, at the highest and best use as subdivision property, but contend that they are entitled to special tax assessment either for farm use (ORS 308.370 et seq.) or designated forest land (ORS 321.605 et seq.). These classifications were denied in the defendant's order.

After taking testimony, the court viewed the property. It lies directly south of a similar tract which the plaintiffs have successfully subdivided and which is now developed.

The plaintiffs purchased the subject property on a contract in September 1964 at a price of $1,900 per acre. It had been part of a farm operated by the seller for many years. After the purchase, plaintiffs' neighbor, a farmer, continued to farm the property in conjunction with his own land, planting grain and potatoes, so that a farm use exemption was obtained in each year prior to 1970. In 1968, the neighbor harvested the potato crop in late October or November, sold his farm and moved away. Desiring to preserve the farm use status, and believing that he must act before January 1, 1969, the plaintiff husband (hereinafter referred to as plaintiff) and his son planted about 5,000 pine, redwood, spruce, locust, olive, elm and fir seedlings in a 15-acre area, after the potatoes had been harvested and before December 31, 1968. The plaintiff testified that he intended this planting to consist of ornamental trees which he proposed to market through

a neighbor. At the time of trial in 1972, no trees had been prepared for sale or sold, although some had grown to a sufficient size. In his work as subdivider and builder, the plaintiff found it necessary to expend about $300 for ornamental trees to landscape each lot, and this experience suggested this use of his unimproved land.

The plaintiff's application for a special assessment of unzoned farmland for 1969 was approved but the application for 1970 (listing "ornamentals" as the sole crop) was denied by the farm appraisal supervisor for Washington County because the 9x12-foot spacing of the trees did not conform to the intervals typical in a bona fide nursery and the total planting constituted less than 10 percent of standard planting density. Thereafter, apparently at the suggestion of the assessor's office, the plaintiff applied for and received a designation for 16.16 acres as forest land under ORS 321.605 et seq. Nevertheless, the plaintiff appealed to the Department of Revenue to reinstate the farm use status for 1970, stating in his petition:

"Petitioners desire to continue farming a majority of this land for at least ten years, but the farming cannot be profitable without deferral of the tax as the land lies in an area that is urbanizing and the values are high and loss of five years deferred taxes will require payment of $3,341.60 in deferred taxes. Washington County has adopted a master engineering plan for sewer services and has formed a unified sewerage agency for Washington County. No sewers are planned for the land in question for at least ten years in the engineering plan adopted by the County. This land is typical of those to which the legislature intended to grant deferrals for green belt areas to contain urbanization to lands served by sewer, water and other urban services."

In its Order No. VL 71-385, the Department of Revenue found that the petitioners "have not given their land over to bona fide farm use" and also that the land was "not entitled to the special assessment as designated forest land."

Farm use lands and designated forest land are mutually exclusive. ORS 215.203(2)(a) states that "farm use" does not include the use of land subject to the provisions of ORS chapter 321. ORS 321.605(3) provides that the forest land which may be designated for special tax purposes within the statute must be land "which either is being held or used for the predominant purpose of growing and harvesting trees of a marketable species * * * or is land the highest and best use of which is the growing and harvesting of such trees. * * *" The purposes of the act are set out in ORS 321.610 and they do not suggest a legislative intent to apply the statute to a few acres of potential subdivision land in an increasingly populated area, pending the erection of personal residences. At the trial, the plaintiff, a lawyer, agreed that the forest designation was not appropriate for his property. The Department of Revenue's denial of the designation of forest land of the subject property is affirmed. Its authority to overrule the assessor's determination, once the question has been brought to the department's attention, is amply supported by ORS 305.090, 306.111 and 306.220. See also *State ex rel. v. Smith et al.*, 197 Or 96, 252 P2d 550 (1953).

The ultimate question before the court is whether the planting of the ornamental seedlings created a bona fide farm use so as to meet the requirements found in ORS 215.203, 308.345 and 308.370 to 308.395. These sections create a partial exemption

and are subject to the rule of strict construction. See the cases cited in *Emanuel Lutheran Char. v. Dept. of Rev.*, 4 OTR 410, 415-416 (1971). Following this rule, the court could paraphrase *Monner v. Dept. of Rev.*, 3 OTR 523, 526 (1969) (substituting "ornamental" for "Christmas"):

> "Assuming, without deciding, that raising ornamental trees constitutes horticultural use of the land, the land has not produced any income for plaintiff and in order to receive a farm use classification it must fall within the exception for 'land planted in orchards *or other perennials prior to maturity for bearing crops.*'"

And, continuing to paraphrase at 527:

> "3. In common and ordinary parlance the growing and harvesting of ornamental trees would not be the growing and harvesting of a perennial which bears crops."

On this basis, it could be concluded that ornamental trees are not within the provisions of ORS 215.203(2) (c), and plaintiff is not entitled to the farm use classification for this land. Without a farm operation, there is nothing to support a claim for exemption of the 4.60 acres described as the farm woodlot. *Linfoot v. Dept. of Revenue*, 4 OTR 489 (1971).

Even if one were to adopt a less technical view, plaintiff could not prevail, since the court finds that he is not conducting a bona fide farming operation.

■ "The question of what properly constitutes a bona fide farm is difficult to determine and it is equally difficult under the statutes to establish any guidelines or standards." *Hartsock v. Commission*, 3 OTR 434, 436 (1969). However, the thrust of the statutes and the regulations thereunder (one of which

requires the administrative authority to provide by regulation "for a more detailed definition of farm use,") leads the court to the conclusion that the statutory scheme has a broader public purpose than the mere provision of a tax relief plan for a person who mechanically follows the statute. As stated in *Ritch v. Dept. of Revenue,* 4 OTR 206, 210 (1970):

> "The purpose of the special farm use assessment classification was to give tax relief to owners of farm lands who were using their property for that purpose and to retard the diversion of agricultural land to other uses. * * *"

Plaintiff was not and is not a farmer. He paid $1,900 per acre for land, not for the purpose of farming it but for the purpose of subdividing it. Plaintiff's own residence and other houses built under his direction lie close to the subject property and he has subdivided and sold three lots out of the subject property since the seedling ornamentals were planted. Some residential building is currently in progress. Signs on the tract indicate that lots are for sale. Plaintiff has had no experience in farming and he never consulted any nurserymen, extension agent or other knowledgable person at the time he made a determination, selection and planting of ornamental trees. He invested about $600 to $700 for seedlings and another $1,015 for a tractor and disk harrow. Some disking has been done in the past but its effects are no longer apparent. The seedlings were spread out to cover the acreage, not to turn it to profitable account. A lack of farming activity, of farm planning, of farm records and of agricultural interest is patent in the testimony.

Although plaintiff's petition to the department suggested that Washington County's master sewer plan

hindered development, his testimony shows that the property has been approved for use of septic tanks and sales of lots for residential purposes and can be improved at any time when the owner finds a suitable buyer.

The plaintiff has testified in a straightforward manner and has not acted evasively. His interpretation of the statute differs from that of the tax administrator. He admits that his plans do not contemplate the preservation of the subject property for farm purposes but only to engage in interim activities which are designed for tax savings so far as possible during a possibly protracted period required for the sale of lots for residential purposes.

It is reasonable to assume that the legislature designed the farm use statutes with a broader social policy than the saving of taxes to a specific group of persons, knowing as it did that the burden of the levy must be imposed upon other taxpayers in the taxing district.[1] On the other hand, the public interest in the preservation of good agricultural land and the maintenance of open spaces is well known by members of the Legislative Assembly and the statutes relating to farm zoning and to partial exemption for farm use are deemed to rest upon that foundation, for the benefit of all citizens.

The defendant's order is affirmed.

---

[1] Potential additional property taxes deferred on account of nonzoned farmland, 1968-69, $3,083,849; 1969-70, $6,370,748; 1970-71, $9,945,158. (Dept. of Rev., Res. & Plan. Sec.)