IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| HOWARD & PAT WINTERS TRUST, | ) | |
| HOWARD AND PAT WINTERS, Trustees, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 240667N |
| | ) | |
| v. | ) | |
| | ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's denial of exclusive farm use (EFU) rollover, dated

September 26, 2024, for the 2024-25 tax year. A trial was held on July 23, 2025, in the

courtroom of the Oregon Tax Court. Howard Winters (Winters) appeared and testified on behalf

of Plaintiffs. Louisa H. McIntyre, Assistant County Counsel, appeared on behalf of Defendant.

Megan Swackhamer (Swackhamer) testified on behalf of Defendant. Plaintiffs' Exhibits PE 1 to

14 and Defendant's Exhibits DE 1 to 16 were received without objection. Defendant moved to

dismiss the case under Tax Court Rule (TCR) 60 (motion for dismissal at trial), and the motion

was denied.

## I. STATEMENT OF FACTS

Plaintiffs own a 13-acre parcel of land identified as account R322465 (subject property).

The subject property had previously been designated as Western Oregon forestland and was

specially assessed. (*See* PE 6.) On May 7, 2024, Defendant notified Plaintiffs that six acres of

the subject property had been disqualified from special assessment. (*Id*.) The property was

disqualified under ORS 321.359(1)(b)(C),[1] which applies when the assessor discovers "that the

land is no longer forestland." On June 7, 2024, Plaintiffs requested to rollover the entire

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2023.

DECISION  TC-MD 240667N                                                                               1

property to farm use special assessment, as defined under ORS 308A.050 to 308A.128. (DE 1.) Plaintiffs identified the farm activity on the property as a woodlot. (*Id.*) On August 7, 2024, Defendant approved the rollover of seven of the thirteen acres. (Compl at 3, 5-6.)

The parties subsequently corresponded several times over email, and Winters understood Defendant's position to be that the six disqualified acres did not meet the description of a woodlot, because the area is not wooded. (PE 13.) On September 25, 2024, Plaintiffs again requested a rollover to farm use special assessment, but this application specifically asked that only the six acres at issue be rolled over. (DE 2.) Defendant denied this request on September 26, 2024. (DE 3.) The denial stated that Plaintiffs' request was "denied pursuant to ORS 308A.050-308A.743." (*Id.*)

At trial, both Plaintiffs and Defendant submitted photographs of the subject property. Winters pointed to six or seven significant trees on the six acres, identifying them as chestnut and cottonwood. (*See also* PE 1.) Winters also testified there are additional saplings or "poles" on the property. (PE 2.) He stated that trees were cleared off the six acres in 2005 or 2006, due to wind damage, and the property was then farmed for a number of years. Plaintiffs now rent the six acres to Winters's brothers, who have not farmed the property for the past two years, though they do sell chestnuts from the trees, along with some willow cuttings.

Swackhamer testified that she inspected the subject property in April 2024 while working as a tax exemption specialist and observed a large "open" area that was not treed, though it was bordered by trees. (*See also* DE 4, field inspection checklist.) She testified that she did not observe any indication of recent tree planting, any farming, or any preparatory activities. She observed an "abandoned berry area," where she observed overgrown blackberries.

/ / /

Defendant submitted an aerial photograph of the subject property with a line delineating the six-acre area from the treed remainder of the property. (DE 6.) Winters claimed the line cuts off some additional trees, but Swackhamer testified the area in question shows shadows of trees, not trees themselves. (PE 5; DE 14.)

Swackhamer testified that Defendant's notice of denial for farm use special assessment served to notify Plaintiffs of "what areas are approved and not approved." She noted that the rules regarding notice of disqualification from special assessment do not apply to a denial of a rollover request. When asked at trial whether he understood Defendant's position—that the property was denied because it was not wooded—Winters responded that he did.

## II. ANALYSIS

There are two issues in this case: (1) whether Defendant properly denied Plaintiffs' request to rollover six acres of the subject property to farm use special assessment as a woodlot for the 2024-25 tax year, and (2) whether Defendant's notice of denial of Plaintiffs' request was sufficient. The sufficiency of notice will be addressed first. As the parties seeking relief, Plaintiffs ultimately bear the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).

A.  *Notice of Denial*

Plaintiffs claim the notice of denial they received from Defendant did not provide an adequate reason for the denial, as it broadly cited to the entirety of ORS chapter 308A. (PE 13.) Under Oregon law, certain actions by county assessors require statutorily mandated notice. For example, an assessor must notify the taxpayer in writing of the reason for disqualification within

/ / /

30 days of disqualifying designated forestland from special assessment. ORS 308A.718(1)(c) and (3). Defendant did this for the six acres of the subject property disqualified in 2024.

There are no similar statutory requirements for notifying a taxpayer of a denial of a rollover request for farm use special assessment in an EFU zone. In determining the sufficiency of a notice, the court considers whether the notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 US 306, 314-15, 70 S Ct 652, 94 L Ed 865 (1950). In *Carson v. Department of Revenue*, TC-MD 170296R, 2018 WL 4944956 at *6 (Or Tax M Div, Oct 9, 2018), this court held that even a brief or vague notice may still be sufficient if, in context of back-and-forth communication, it apprises the taxpayer of the relevant issues and provides them with enough information to respond.

Here, the notice informed Plaintiffs of the denial, cited the relevant chapter of the ORS, and provided the location and timing for an appeal. It also included a phone number and email for Plaintiffs to contact, should they have any questions. Plaintiffs utilized that contact information, as they referenced two emails received from Defendant that explained Defendant's position regarding the six acres. (Compl at 3.) Finally, Winters testified at trial that he was aware that the property's lack of trees was the reason for the denial. Notice was sufficient, and Plaintiffs were aware of the reason for the denial. Plaintiffs also received a *de novo* opportunity to challenge the denial before this court. ORS 305.425(1).

The court next considers whether six acres of the subject property qualify for farm use special assessment as a woodlot.

/ / /

/ / /

B.    *What Constitutes a Woodlot*

The parties offer differing interpretations of what constitutes a woodlot.  Winters noted in his testimony that the farm use statute does not define a woodlot and testified that his research led him to find definitions in the Department of Revenue's 2017 Forestland Manual (Forestland Manual) and 2022 Farm Use Manual (Farm Use Manual).  Using the manuals as guidance, Plaintiffs' position is essentially that any area up to 20 acres qualifies, as long as it is contiguous to the farm unit and has potential wood volume.  In contrast, Defendant asks the court to adopt the plain meaning of woodlot – "a relatively restricted area devoted to the growing of forest trees" – as defined in *Webster's Second New International Dictionary* and used by the court in *Linfoot v. Department of Revenue*, 4 OTR 489, 493 (1971).  The parties disagree about whether the number of trees on Plaintiffs' property is sufficient to comprise a woodlot.

1.    *Principles of statutory construction*

The issue presented here is what constitutes a woodlot under ORS 308A.056(3)(h).[2] When interpreting a statute, the court's "paramount goal" is to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (citations omitted).  The court begins with the text and context as "the best evidence of the legislature's intent." *PGE*, 371 Or at 610; *see also Gaines*, 346 Or at 171 ("[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law").  In construing the text, words of common usage are "given their plain, natural, and ordinary meaning." *PGE*, 317 Or at 611.  Context "includes prior versions of the statute, applicable case law interpreting

_____

[2] This issue is one of first impression.  In *Linfoot v. Department of Revenue*, 4 OTR 489 (1971), the court discussed the definition of a farm "woodlot" in the context of predecessor statutes and decided the case on different grounds.

the statute, and other related statutes." *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 96 (2002). "[A]fter examining text and context," the court may consider the legislative history of the statute to the extent helpful. *Gaines*, 346 Or at 171-172; *See also* ORS 174.020.[3] Finally, "the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 346 Or at 172.

2.        *Statutory construction of ORS 308A.056(3)(h) – text and context*

The court begins its evaluation of the meaning of the term "woodlot" as used in ORS 308A.056(3)(h) by examining the text and context. Under ORS 308A.062(1), "[a]ny land that is within an exclusive farm use zone and that is used exclusively for farm use shall qualify for farm use special assessment under ORS 308A.050 to 308A.128 * * *." For purposes of this section, land currently employed for farm use includes "[a]ny land constituting a woodlot, not to exceed 20 acres, contiguous to and owned by the owner of land specially valued for farm use even if the land constituting the woodlot is not utilized in conjunction with farm use[.]" ORS 308A.056(3)(h). Here, there is no dispute regarding contiguity or ownership.

The term woodlot is not defined in ORS 308A.056 or in any other statutes in the chapter. The definition of "woodlot" referenced in *Linfoot*, based on *Webster's* second edition, provides the relevant plain meaning of the term as it appears in ORS 308A.056.[4] That definition is unchanged in the current edition of *Webster's*, defining a woodlot as "a relatively restricted area devoted to the growing of forest trees." *Webster's Third New Int'l Dictionary* 2631 (unabridged ed 2002). It defines "devoted" as "consecrated to a purpose." *Id*. at 620. The common meaning

---

[3] Neither party offered any legislative history in this case, and the court finds it unnecessary to move beyond the statute's text and context.

[4] The court uses *Webster's* second edition to determine the plain meaning of woodlot, because that was the edition existing when ORS 308A.056 was enacted in 1999. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296 n 7, 337 P3d 768 (2014) (stressing the importance of consulting dictionary definitions contemporaneous with enactment of the statute).

of a woodlot, as reflected in the dictionary, tends to support Defendant's reading of the statute rather than Plaintiffs'. Without more, a six-acre property with only six or seven trees is not "devoted to" growing forest trees.

Discussion by the courts of how to define a woodlot is scant. The Oregon Supreme Court briefly discussed woodlots as they pertain to dwellings in *1000 Friends of Oregon v. Land Conservation & Development Commission and Lane County*, 305 Or 384, 752 P2d 271 (1988). In that case, the court said "[a]lthough we find no specific legislative history on the subject, we infer that the legislature was referring to woodlots in the common sense of a small area where the landowner occasionally harvests trees for personal consumption or for sale as wood and not as a forest product." *Id*. at 398–99. As stated above, the court in *Linfoot* turned to *Webster's Second New International Dictionary* for the definition. 4 OTR at 493. In that case, the woodlot was denied special assessment because the property was not "appurtenant to farm use land," as required by the predecessor statutes, so the court did not include a detailed analysis of the potential woodlot itself. *Id*. at 496. Neither case provides further guidance that would bring Plaintiffs' six acres under the definition of a woodlot.

Woodlots are included under ORS 308A.056(3), which provides a list of activities that constitute farm use, even though the land is not currently employed "for the primary purpose of obtaining a profit in money," as required under ORS 308A.056(1). While not exceptions *per se*, this subsection allows for certain situations where land that does not necessarily meet the more stringent qualifications of ORS 308A.056(1) may still constitute farm use. *See Bernasek v. Umatilla County Assessor*, TC-MD 081035C, 2009 WL 3682582 at *2 (Or Tax M Div, Oct 30, 2009) (granting special assessment to land subject to a "farm related government program" even though no farming occurred on the property). Woodlots, for example, are not subject to

minimum income or stocking requirements found elsewhere in special assessment programs. *See*, *i.e.*, ORS 308A.071 (providing income requirements for farm uses in non-exclusive farm use zones) and Oregon Administrative Rule (OAR) 150-321-0340 (providing stocking requirements for Western Oregon designated forestland).

The court is persuaded the legislature intended the common meaning of woodlot in ORS 308A.056(3)(h), an area devoted to the growing of forest trees. Statutory context shows the requirements of a woodlot are less stringent than other farm and forest activities. Even under the more liberal provisions of ORS 308A.056(3)(h), the facts here do not support a finding of a woodlot. Evidence demonstrating that an area is devoted to growing trees might include the presence of a significant number of trees, signs that trees have recently been harvested or planted, or an indication that the soil is somehow being cultivated for imminent planting. None of that evidence is present here. Both photographs and testimony show the property is primarily open space, with only six or seven significant trees spread over six acres. There is no evidence that new planting was done after trees were cleared in 2005. Even at its most generous interpretation, a woodlot must include more facts indicating its existence and purpose.

3.      *Administrative guidance in Department of Revenue manuals*

The Department of Revenue's Forestland and Farm Use Manuals, offered by Plaintiffs, do not contradict that conclusion. The Forestland Manual explains that a "[f]arm woodlot is *forested land* in an area that supports natural vegetation and includes tree species. There are no minimum stocking or species requirements associated with forested land under the farm woodlot special assessment." 2017 Forestland Manual at 2-16, 150-303-424 (Rev 04-17) (emphasis added). The Farm Use Manual provides further detail:

/ / /

"**Woodlots (apply to both eastern and western Oregon)**

"No application is necessary to assess up to a maximum of 20 woodlot acres for 'farm use' under ORS 308A.056(3) current employment statutes. Any acres EFU or non-EFU that meet the following criteria may qualify:

"The woodlot must be contiguous to the farm unit acres receiving farm use special assessment and the woodlot must also be owned by the owner of the contiguous land specially assessed for farm use. * * *

"* * * * *

"No definition exists to define the type and volume of wood necessary to identify land qualifying for woodlot. As long as the land has potential useful wood volume up to 20 acres per farm unit can qualify. Woodlot acres may have sufficient stocking to qualify for 'forestland' special assessment, but if the owner chooses to have the land specially assessed as a farm woodlot they may do so and receive up to 20 acres as farm woodlot."

2022 Farm Use Manual at 2-3 to 2-4, 150-303-422 (Rev 11-07-22).

Under that guidance, which provides persuasive authority, a woodlot up to 20 acres that is contiguous to the farm unit and is under the same ownership may qualify for farm use. Consistent with ORS 308A.056(3)(h), no specific type or volume of wood is required, and there are no minimum stocking or species requirements. However, as a preliminary matter, before determining whether a property may qualify, the land must, in fact, be a woodlot. As discussed above, the six acres at issue do not meet the plain meaning of this term.

III. CONCLUSION

A clearer standard for identifying a woodlot would likely benefit applicants for this special assessment. Yet, even if the definition of woodlot is loosely construed, the facts do not support a finding that the subject project is a woodlot. Defendant properly denied Plaintiffs' request to rollover six acres of the subject property to farm use special assessment as a woodlot. Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal of account R322465 for the 2024-25 tax year is denied.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on October 8, 2025.*