# MALCOLM H. ARMOUR *v.*
# DEPARTMENT OF REVENUE

Plaintiff appeared in persona propria.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered March 31, 1976, with remand to defendant.

CARLISLE B. ROBERTS, Judge.

This is an appeal from the defendant's Order No. VL 75-551, dated October 8, 1975. The question presented is the determination of the proper land classification of 48 acres of plaintiff's unimproved property adjoining the Little Luckiamute and Luckiamute Rivers, located in Tax Lots 200 and 300 of the Polk

County Assessor's Account No. 13-8 95 15, as of January 1, 1975.

During the last 27 years, plaintiff has owned 249 acres of commercial farmland in Polk County which is now zoned for exclusive farm use. The southwesterly and southerly boundary of subject property is marked by the Little Luckiamute River which, flowing in an easterly direction, joins the Luckiamute River, after which the enlarged Luckiamute crosses the southerly border and penetrates the southeastern corner of plaintiff's farm. The area adjacent to the main 'course of the streams is a maze of old river channels or meanders, with abrupt banks up to 20 feet in height, covered by brush, wild blackberry vines, and some trees of little commercial value.

For a number of years prior to the January 1, 1975, assessment date, all of plaintiff's property, including the brushy area adjacent to the rivers, was classified as farm use land by the Polk County Assessor, pursuant to ORS 308.345 et seq., and was assessed and taxed accordingly. Using aerial photographs, the county assessor's staff determined that, as of January 1, 1975, the brushland along the rivers totaled 67.90 acres, all nontillable and therefore not used for farming. Conceding that 19.55 acres were essential to prevent the rivers from further eroding the farmland, the assessor allowed them to be continued within the farm use classification. However, 48.35 untillable acres were removed from the favored category.

The plaintiff contends that the whole acreage in brushland is essential for guarding the cultivated soil adjacent to it from erosion and should be deemed to come within the farm use category for that reason and others. Since the county conceded that some acreage is necessary for the protection of the cultivated area

from erosion by the river, the case was presented as a question of the judgment of the assessor's office as opposed to the judgment of the owner as to the number of acres that reasonably can be designated as a necessary barrier to the river.

The court visited the site immediately preceeding trial.

Apparently, this case arose because members of the staff of the assessor's office, properly zealous in their work, had noted from personal observation and study of aerial maps that, in areas of other ownerships easterly and westerly of the subject property, the brushy buffer zone contiguous to the rivers was often quite narrow, whereas at the point of the subject property it was much more extensive. Mr. Eugene McCarthy, an experienced farm appraiser for the county assessor and a former farmer, testified that, having found that many farmers cleared the "buffer area," it was his conclusion that some of the subject property, with substantial capital expenditure, could be turned into tillable farm property. Mr. McCarthy testified that such an undertaking would be "a long-range plan, but steps should be taken" because there is an "excessive amount of brushland." He agreed that presently such land is nontillable and could not be put to any agricultural use. He allowed the retention of approximately 20 acres (the boundaries of which were not defined in the testimony or exhibits) of the total 67.90 acres adjacent to the river in the farm use classification (because of the necessity of protecting the farmlands). He then fully assessed the remaining 48.35 acres of this brushland (presumably, lying between the 20-acre "farm use" part and the tillable farmland) as Class VI-k or VII-k land at $150 per acre. If this buffer land had been kept in farm use as of January 1, 1975, it would have been given a farm use value of $29, more or less, per acre.

The most expert and convincing testimony in the suit was that given by Mr. Daryl E. Otjen and Mr. William A. Freeland. Both witnesses were and are soil conservationists with the U.S. Department of Agriculture, assigned to work in Polk County. Mr. Otjen had been consulted a number of years ago by the plaintiff to determine whether a dike could be placed upon plaintiff's property adjacent to the river, in lieu of the brushland barrier. Mr. Otjen testified that a dike was not feasible for lack of a proper foundation and, further, such a structure would throw more water on someone else's land, causing additional difficulties in this hazardous area. The two soil conservationists strongly testified that the brushland should be left in its present condition; that more than "slight to medium erosion" is already suffered at the site and that the amount of brushland is not out of proportion in the circumstances; its removal would result in heavy erosion.

On being questioned on the county's testimony respecting the alleged narrow buffer zones to be found in lands further downstream, the soil conservationists emphasized that each site must be considered individually. This testimony, confirmed by the aerial photographs, showed that plaintiff's property at the river site is so flat that meanders develop with ease, and that this process is continuing. There was no showing that the riverbanks of adjacent owners were comparable to those on the subject property.

We are confronted with a truly anomalous situation. The subject property clearly is "wasteland," unfit for any economic use. Under the definition of farm use land, no wasteland should be classified as "farm use." *Kellems v. Dept. of Rev.,* 4 OTR 561 (1971); *Hart v. Dept. of Rev.,* 3 OTR 493 (1969); *Foy v. Commission,* 3 OTR 307 (1968). An exception is made only for small areas which must be considered

de minimis, to ease administration. *Spooner v. Dept. of Rev.*, 4 OTR 66 (1970). Yet the assessor has given farm use value to a strip of the land, adjacent to the stream, arbitrarily determined by him, recognizing it to be a buffer which is a necessary adjunct to farm use. The farm use statute is designed to prohibit the exemption of numerous adjuncts to farm use. It is a statute which seeks to restrict taxpayer claims for special assessment to those tillable lands which are actively farmed for purposes of profit. The assessor has overlooked the factual situation while using the wrong statute to mitigate the taxpayer's assessment. At the same time, the assessor asserts a true cash value of $150 per acre for some 48 acres of wasteland which should not be and never has been tilled and has no other purpose than to act as a buffer for the meanders of the Luckiamute Rivers.

The court makes the following observations and conclusions:

1. Plaintiff's property lies in a farm use zone and the greater part of its acreage is actually used for farming and qualifies for farm use assessment.

2. The subject property, 67.90 acres, the classification of which is here in dispute, although nontillable and never used for farming, was classified as farm use land by the county assessor for a number of years.

3. For the tax year 1975-1976, the county assessor erroneously continued to classify 19.55 acres of the subject property as in farm use, recognizing its highest and best use as a buffer zone, essential to the prevention of erosion of tillable farmland, but declassified 48.35 acres of identical land, which the assessor categorized as Class VI-k or Class VII-k land and valued at $150 per acre.

4. Based on the preponderant evidence, the court finds that the whole 67.90 acres of the subject

property has a highest and best use as a buffer to mitigate erosion by the river; that, although the soil may be fertile, the land is low, swampy, brush covered, grossly channeled, untillable and should be treated as wasteland. No part qualifies for farm use assessment.

5. Neither the county assessor nor the defendant has given consideration to the true cash value of the subject property on the assessment date in its proper category as wasteland and has not submitted values for such land for assessment purposes.

6. In prior times, under lower tax rates, following typical assessment practices which considered farm sales on the basis of the whole transaction, it was not necessary for the assessor to attribute a value to specific acres of farmland. With increased preoccupation in tax matters on the part of the property owners and legislators, it has become necessary for county assessors to recognize uniform soil types and other aids to allocation of values to specific acres.

7. The Department of Revenue has been entrusted with a duty to promulgate rules as aids in determining the true cash value of real property (ORS 305.100, 308.205). It has promulgated OAR 150-308.215(1) relating to property classes, but it will recognize that the subject property does not fit into any of the categories described in the rule. There is no provision for "wasteland" or the like. In the past, such natural areas, under lower tax rates, may have been disregarded under the convenient description "de minimis." Now, as the department observed in its Order No. VL 75-551, "* * * 48 acres of virtually unused land is too great an area to be considered as de minimis * * *."

Therefore, the case must be remanded to the defendant to determine the true cash value of the sub-

ject 67.90 acres in its natural state, as wasteland, as of January 1, 1975, the highest and best use of which is to serve as a buffer to prevent in some measure the gross erosion of valuable farmland. (The assessed value of $150 per acre is deemed inordinately high.)

Each party is to pay its or his own costs.