## INEZ T. KELLEMS *v.* DEPARTMENT OF REVENUE

James B. Minturn, Bodie, Minturn & Glanz, Prineville, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered November 2, 1971.

Carlisle B. Roberts, Judge.

This is an appeal from the Department of Revenue's Order No. VL 71-69, dated February 9, 1971, confirming the Deschutes County Assessor's denial in part of an application for special assessment as unzoned farmland of property described as "Code 1-4, 211036-100, Tax Lot 100 and Code 1-4, 2111-900, Tax Lot 900" for the 1970-1971 tax year. Approximately one-half of the total number of acres was disallowed, comprising all of Tax Lot 100 (179.53 acres) and those parts of Tax Lot 900 described as the southeast quarter

of Section 30, the east half of the east half of Section 31 and the west half of the west half of Section 32, all in Township 21 South, Range 11 East, Willamette Meridian (480 acres). (This description of the disqualified land in Tax Lot 900 does not coincide with that in the pleadings but is in accord with the testimony and is clearly depicted on defendant's Exhibit B.)

The plaintiff and her husband had owned the property for nearly 30 years, operating it all that time as a cattle ranch, but in the fall of 1966, through the spring of 1968, the property was leased to Shelby Grimes and subsequently, successively, to Ross Everly, to Pete Sturza and Walt Franks from the fall of 1967 to September 1969, then to Victor Manciu during the tax year in question. In the leases to these parties, it was provided that the land could be used for grazing purposes only. Mr. W. L. Kurtz, for 10 years a farm appraiser for the Deschutes County Assessor, testified that the first application for farm use was made by the plaintiff for the tax year 1968-1969 and was approved without review (because of the lack of manpower at the time in the assessor's office; it is inferred that the same condition applied to the year 1969-1970). Upon the application being reviewed for 1970-1971, Mr. Kurtz went on to the property and came to the conclusion that the portions above described were not in use and had not been used for some time. He confirmed this conclusion by interviews with Grimes, Sturza and Manciu. The latter two testified that they did not know the property was contained within their lease. They also observed that it was not properly fenced, contained little grass and no water. The partial disqualification was then made by the assessor and proper notice was given to the taxpayer. Appeal to the Department of Revenue and to this court followed.

The preponderance of the testimony clearly shows, and the court finds, that the disputed property was not used for farm uses or for any other purpose during the year in question.

The "farm use" statutes are replete with language indicating that the active, current use and employment of land for farm purposes is essential to a claim for farm use exemption. ORS 215.203 (2)(a) defines "farm use" as the current employment of land for the purpose of obtaining a profit in money by the feeding of livestock and other uses. Paragraph (b) of the same subsection requires that the "farm use" produce not less than $500 gross income for three out of the five years immediately preceding the year of application. (This is measured by a lessee's production, not by the rent paid to a lessor.) Paragraph (c) of the same subsection exempts from "current employment" specific uses (the exception which permits land to lie fallow being discussed later in this decision). ORS 308.345 (2) uses the language "agricultural lands, when devoted exclusively to farm use * * *." Again, in ORS 308.370 we find the phrases "is used exclusively for farm use" and "which is being used and has been used for the preceding two years * * *." ORS 308.380 (2) vests in the county assessor the duty to consider "the use of the land by the owner, renter or operator thereof * * *." Under ORS 308.370 (3), the assessor is given authority to recognize disqualification of the land which was approved as of January 1 if it goes into disuse prior to July 1 of the same year.

There was some suggestion in the testimony that the unused land was lying "fallow" during the tax year and one or two years prior thereto, and therefore should come under the exception. However, there was no testimony to show what was meant by "fallow" and

the testimony was convincing that the land was allowed to lie idle because of ignorance of its inclusion within the leased area. It would appear that the land was not only outside the farm use statute but, in addition, was not economically useful as farmland.

■■ The record includes statements by witnesses that the unused portion had always been considered as a unit or part of the ranch operation. The court recognizes that any farm area will contain some portions which cannot be used or cultivated but which are too small to merit disqualification by the assessor of either the wasteland itself or the parcel as a whole, as a practical matter. Plaintiff argued that in the present instance the whole ranch is regarded as a unit and that failure to utilize certain areas in a given year should not be contemplated as a ground for disqualification. Here, once again, is a problem of degree. However, in the present instance, such a large portion of contiguous ground is found not to be used that the assessor cannot lawfully disregard it. The purpose of the law would be subverted by allowing it to be given the benefits of farm use, in such circumstances. *Linfoot v. Dept. of Rev.,* 4 OTR 489 (1971). See also *Thornburgh v. Dept. of Rev.,* 4 OTR 248 (1970). The legislative policy manifested by the statute is to give a tax benefit which will stimulate the retention for agricultural use of currently productive agricultural land.

During the course of the trial, there was objection to the testimony of Mr. Kurtz in the use of hearsay in reporting his conversations with certain of the lessees. The court reserved the question. In *State Highway Com. v. Parker et al,* 225 Or 143, 357 P2d 548 (1960), a condemnation proceeding, the court held that an expert witness may testify as to prices paid in

comparable sales, even though such testimony is secondary or hearsay evidence. Such testimony is not admissible for proving the truth of the matter presented therein, but it is useful in ascertaining the basis upon which the expert framed his opinion. Mr. Kurtz' testimony is admitted and used by the court, subject to the limitation mentioned. However, it is noted that both Messrs. Sturza and Manciu, the lessees, were witnesses and that each testified that he did not utilize the partially fenced land which is the subject of this decision because each deemed the land to be outside of the scope of the lease. (There was testimony of a de minimis use by an unknown number of cattle, let into the disputed area by Mr. Manciu for a period of 10 days to two weeks, in the hope of getting some "free" grass. In view of the testimony, the court does not deem this a farm use.)

The assessor's disqualification of the land as farm use land for the tax year 1970-1971 is affirmed and the Department's Order No. VL 71-69 is confirmed, subject to correction in the property description.