## ROBERT E. TAYLOR *v.*
## DEPARTMENT OF REVENUE

Richard Egner, Jr., McAllister & Egner, Gresham, represented plaintiff.

James D. Manary, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered July 30, 1976.

CARLISLE B. ROBERTS, Judge.

Plaintiff appealed from defendant's Order No. VL 75-519, dated September 17, 1975, in which the defendant affirmed the act of the County Assessor of Clackamas County in removing from the farm use classification 31.23 acres (constituting all but two acres of Tax Lot 700) of a 71-acre farm (the balance of the acreage being located in Tax Lot 600) for the tax year 1975-1976. The total parcel was identified on the Clackamas County rolls as Tax Lots 600 and 700, Section 35A, T 1 S, R 2 E, Clackamas County, Oregon. Only the farm use value of Tax Lot 700 is in dispute.

The entire farm was purchased by the plaintiff and his business partners (Russell W. and Darlene J. Wilson, K. Milton and Lucille I. Erickson, and James N. and Marquita A. Biornstad) on contract from Helen L. Meng in 1967. Her father-in-law had started a dairy on the property in 1913. At the time of the purchase by plaintiff and his partners, the property was being farmed by a tenant. The tenant operated the property after the sale for a period and then quit farming, whereupon the land was leased to a neighbor, Mr. Kenneth C. Osbon, whose home overlooks the subject property (Tax Lot 700). Mr. Osbon is a builder who enjoys horses. He began renting the property in July 1973 as a place to pasture his own saddle horses but, after a few months, began boarding saddle horses of other persons for a fee.

The property was accorded a special farm use by the county assessor under ORS 308.370(2) prior to the sale by Helen Meng. Mr. Taylor, the plaintiff, in an application for special assessment of unzoned farmland, filed in Clackamas County on February 22, 1971, reported that the land (Tax Lots 600 and 700) supported 60 cattle. In a renewed application filed March 18, 1974, he reported that the same property was then being leased for a horse pasture with the expectation of grazing not to exceed 14 horses.

Mr. Taylor was notified on February 26, 1975, that the assessor was removing 31.23 acres of the 33.23 acres constituting Tax Lot 700 from special assessment, the removal being based upon ORS 215.203(2) and ORS 308.370(2) and (3).

The relevant part of ORS 215.203(2) reads:

"(2) (a) As used in this section, 'farm use' means the current employment of land * * * supporting *accepted farming practices* for the purpose of obtaining a profit in money * * * by the feed-

ing, breeding, management and sale of, or the produce of, livestock, * * *.

"* * * * *

"(c) As used in this subsection, '*accepted farming practice*' means a mode of operation that is common to farms of a similar nature, *necessary for the operation of such farms to obtain a profit in money*, and customarily utilized in conjunction with farm use." (Emphasis supplied.)

The statute quoted is incorporated by reference into ORS 308.370(2), relating to land which is not within a farm use zone but which is being used "exclusively for farm use as defined in subsection (2) of ORS 215.203 * * *." Subsection (3) of this section reads:

"(3) The entitlement of farm land to the special assessment provisions of this section shall be determined as of January 1. However, if land so qualified becomes disqualified prior to July 1 of the same year, it shall be assessed at its true cash value as defined by law without regard to this section. * * *"

The disqualification of the subject property from special assessment for farm use was in consequence of the survey of the property made by a witness, Mr. Joseph Guttridge, an appraiser in the office of the Clackamas County Assessor since 1961. He is a Certified Appraiser III, especially trained in farm appraisals, and has had experience in general farming since 1940. His duties in the office of the county assessor include some building appraisals but his work is chiefly in the area of land appraisal. In 1964, he began a specialization in farm appraisals. He inspected the subject property in February 1975 and again in August 1975. He testified that his field inspection of the subject property in February 1975 revealed that Tax Lot 600 contained some tansy rag-

wort and it was evident to him that some inadequate efforts had been made to destroy the growth. However, on the subject property, Tax Lot 700, he found that all but two acres was covered with dead grass, thistles, tansy ragwort, and blackberry bushes and it was evident that only two acres were being used as pasture by the horses (which were free to move from Tax Lot 600 into Tax Lot 700 at will). Apparently no effort had been made to retain the usefulness of the affected acres. In his testimony, Mr. Guttridge pointed out that the subject property was part of a parcel which had previously supported 50 to 60 cattle and he concluded that the utilization of 70 plus acres by only about six horses (observed), or the 14 designated in the farm use application, did not indicate a reasonable farm useage of the land. He particularly stressed that the substantial acreage in Tax Lot 700 which had been allowed to revert to weeds of a noxious variety could not be regarded as a utilization of the land for farm purposes in accordance with "accepted farming practice" as defined in ORS 215.203(2) (c).

The testimony of Mr. Guttridge was contradicted by witnesses for the plaintiff; however, the court was deeply impressed by the demonstrated knowledgeability of Mr. Guttridge as an agricultural expert and by his evident honesty and sincerity and finds that his testimony provides that preponderance of the evidence on which the court must act. ORS 305.427.

■ As was stated in *Linfoot v. Dept. of Revenue,* 4 OTR 489 (1971), at 492:

"An examination of ORS 215.203 and other sections relating to the special taxation of agricultural land (ORS 308.345 to 308.395) indicates that the legislature was seeking to protect bona fide farm activities from the encroachments of a market which was constantly finding a 'higher and better

use' for the property (i.e., a use for which an investor was willing to pay a higher price than the sum on which he could expect to obtain a reasonable return through farming)."

*See also Kellems v. Dept. of Rev.,* 4 OTR 561 (1971), at 563:

"The 'farm use' statutes are replete with language indicating that the active, current use and employment of land for farm purposes is essential to a claim for farm use exemption. * * *"

Statutes relating to the special assessment of farm property are on the use of the land, rather than the ownership. *Foy v. Commission,* 3 OTR 307 (1968). The actual use of the land by the lessee, Mr. Osbon, is pertinent here. The court finds that it was his intention to utilize Tax Lots 600 and 700, during the tax year in question, for the principal purpose of boarding saddle horses owned by third parties, which appears to be a farm use under the statute, ORS 215.203(2) (a), defining "farm use," *inter alia,* as meaning the current employment of land for the purpose of obtaining a profit in money by feeding livestock.[1] However, as held in *Kellems, supra,* and *Spooner v. Dept. of Rev.,* 4 OTR 66 (1970), a contiguous area of substantial size, not used for agricultural purposes, must be denied farm use assessment, although within the boundaries of a qualified farm operation.

---

[1] In *Linfoot v. Dept. of Revenue,* 4 OTR 489 (1971), the court found that 6.56 acres of property for which farm use assessment was sought did not come within the statute's provision for special assessment. As stated in *Foy v. Commission,* 3 OTR 307 (1968), in making a determination of farm use, the first requirement is to look to the use of the land by the owner or the lessee. In the *Linfoot* case, the farm activity was carried on by a lessee, but as to the 6.56 acres, the use by the lessee was to pasture his own riding horses, used solely for recreation. Consequently, this segment of the property was not being used and operated for obtaining a profit through agricultural pursuits.

■ The facts, as found by the preponderance of evidence in the present suit, support the assessor's act of removing 31.23 acres of the 33.23 acres constituting Tax Lot 700 from the special assessment. It would be contrary to the intent of the legislature to continue the special assessment with respect to land where the acreage, on account of poor husbandry, is patently incapable of profitable use for farm purposes.

The special farm use assessment results in a diminution of property taxes on certain farm property and this requires additional tax contributions by all taxpayers to meet the property tax levies. Justification is found in the retention of farmland for agricultural production in spite of intense economic competition to divert such land to allegedly "higher and better" uses. To continue the special farm use in the case of land unused or unusable would defeat the legislative policy.[2]

Defendant's Order No. VL 75-519 is affirmed. Defendant is awarded its costs.

---

[2] Legislative policy is further frustrated by the user's tolerance of the growth of tansy ragwort. This is a noxious weed which can cause the death of livestock if eaten in sufficient quantity over a period of time. Mr. Guttridge testified that livestock will avoid it but, lacking sufficient food, will become addicted to it. The weed has been declared a public nuisance by the legislature and its control is required by ORS 452.510 to 452.990.