CARLISLE B. ROBERTS, Judge.
 

 Plaintiffs appeal to this court from defendant’s Order No. VL 78-441, issued July 20, 1978. In that
 
 *[187]
 
 order, the department found that the Jackson County Assessor had properly removed certain land owned by plaintiffs from its unzoned farmland classification because the land was not currently being used as farmland, and thus was disqualified for special assessment for the 1977-1978 tax year.
 

 Plaintiffs are the owners of 16.57 acres of land and a personal residence in Jackson County, Oregon, identified as Assessor’s Account No. 1-1831-9, Tax Lot 400. A hill divides the property in half; the east half of the property contains plaintiffs’ homesite and orchard, while the west half is hillside pastureland, requiring irrigation. The value of the homesite is not in issue, nor is the value of the orchard, which has been specially assessed at its farm use value. The dispute centers solely upon the assessor’s determination that the 8.47 acres of pastureland should be removed from the special farm use classification, effective January 1, 1977.
 
 [1]
 

 Mr. Paul M. Beddoe, one of the owners of the subject property, testified for the plaintiffs. He received his Bachelor of Science degree in horticulture in 1942, and presently works as an agricultural consultant and a "part-time farmer” on the subject property. He grew up on a 450-to-650-acre farm in Yakima Valley, Washington, and has lived with his wife on the subject property for over 20 years. He admitted that the orchard was the main revenue producer on the farm, grossing over $8,000 during 1977. In prior years, he had used the 8.47 pasture aóres for grazing beef cattle, cows, sheep and horses, and irrigated all of the pastureland. Recently, the irrigation pump malfunctioned, so he now irrigates what he can by gravity flow, purchasing the water from the Talent Irrigation
 
 *[188]
 
 District. He presently irrigates just three to four acres of the pastureland because he has not found it possible to irrigate the entire tract.
 

 In 1973, plaintiffs purchased a purebred Appaloosa mare and a colt, with the alleged intent to raise horses to sell. However, soon after placing the two horses on the subject pastureland, they began to founder. Plaintiffs concentrated their efforts to bring the colt and the mare back to good health, and eventually succeeded, but because of the horses’ poor health, plaintiffs did not sell either horse during 1977, nor did they have the mare bred in that year.
 

 Mr. Beddoe also testified that during 1977 he cut some hay off the subject pastureland and placed it in the orchard to use as humus on the soil. Although he was not positive of the exact year, he testified that he did spray, fertilize and irrigate the subject pastureland on occasion dining 1975, 1976 and 1977. Additionally, plaintiffs rented pasture to a neighbor who shows horses professionally. The neighbor allegedly pastured four to six horses on plaintiffs’ property over a period of time which included the 1977-1978 tax year. Although he did not keep a record of how many days the neighbor had her horses on the pasture during the tax year at issue, Mr. Beddoe was sure the neighbor’s horses were placed on plaintiffs’ pastureland during 1977 for several days at a time.
 

 Some of plaintiffs testimony was contradicted by defendant’s witness, a certified appraiser with adequate farming experience, employed in the Jackson County Assessor’s office. The appraiser and a colleague made specific on-site inspections of the subject property sometime in May or June of 1975, 1976 and 1977 and on other occasions "reviewed” the property while working in the neighborhood. From his initial inspection, he determined the pastureland was dry and weedy, with no evidence of irrigation or spraying. He saw the two horses in the pasture, and classified them as "pleasure horses.” According to the appraiser,
 
 *[189]
 
 follow-up on-site inspections in 1976 and 1977 revealed the same dry, weedy conditions on the pastureland, with no livestock on the property other than the two horses. The land would support four horses. As a result of these inspections, the appraiser determined that the pastureland did not meet the farm use law requirements of ORS 215.203(2)(a). The assessor then took the necessary steps to disqualify the subject acreage from the special assessment as farm use property.
 

 ORS 308.370(2) provides, upon application by the taxpayer pursuant to ORS 308.375, for farm use assessment for qualifying realty not within an "exclusive farm use zone.” ORS 308.370(2) explicitly incorporates by reference the definition of "farm use” provided in ORS 215.203(2)(a):
 

 "(2)(a) As used in this section, 'farm use’ means
 
 the current employment of land
 
 including that portion of such lands under buildings supporting accepted farming practices
 
 for the purpose of obtaining a profit in money
 
 by raising, harvesting and selling crops or by the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. * * *” (Emphasis supplied.)
 

 It is imperative to note that the farm use provisions (ORS 215.203 to 215.273 and ORS 308.370 to 308.403) were not designed merely to provide tax relief to those who mechanically follow some statutory minimum. Rather, the legislative policy is to stiniulate the retention of currently productive farmland for agricultural use; to retard the diversion of agricultural land to other uses; and to stimulate adoption of these policies by providing a tax benefit to those who seek income by using the land for farm purposes only.
 
 Masters v. Dept. of Rev.,
 
 5 OTR 134, 139 (1972);
 
 Kellems v. Dept. of Rev.,
 
 4 OTR 561, 564 (1971);
 
 Ritch v. Dept. of Rev., 4
 
 OTR 206, 210 (1970),
 
 rev’d on other
 
 
 *[190]
 

 grounds,
 
 261 Or 78, 493 P2d 38 (1972).
 
 See also Rutherford v. Armstrong,
 
 31 Or App 1319, 1321, 572 P2d 1331, 1332 (1977). "Bona fide farm use” is a term used in the pertinent statutes since their first enactment.
 
 See
 
 ORS 308.345(1). It is in light of this legislative policy that the facts of this case must be viewed.
 

 The court believes that the preponderance of the evidence supports defendant’s conclusion that the subject property was not in "farm use” in 1977. Thus, the assessor acted properly in removing the 8.47 acres of pastureland from its farm use status for that year. While testimony that plaintiffs purchased their mare and colt in 1973 in order to raise purebred Appaloosas to sell was not contradicted, it is not convincing per se. The fact that they did not sell any horses in 1977 is not controlling nor is the possibility that actual profit might be realized on the Appaloosas at a later time.
 
 [2]
 
 What is significant is the plaintiffs’ failure to maintain the water supply for the total acres of pasture, to make a determined effort to minimize the weeds, or to keep records of the use, costs and profits of the pastureland. The owner is a trained agriculturist and an agricultural consultant but his "part-time farming,” with respect to the pastureland, appears more nearly to be the pursuit of a hobby or a partial vacation from farming, rather than the active, bona fide activity, involving intensive cultivation, which the statute contemplates.
 

 The great boon of tax relief to the bona fide farmer through the special exemption for farm use is not to be extended to the professional man’s fine
 
 *[191]
 
 residence in a filbert orchard, the city worker’s five suburban acres and a cow, the retired person’s 20 acres of marginal land on which a travel trailer constitutes the personal residence, unless the day-to-day activities on the subject land are principally and patently directed to achieving a profit in money through the farm use of the land.
 

 The statute imposes a difficult burden on the county assessor in determining what is partially exempt farm use. But, since the burden of proof is placed upon the applicant for special treatment, it behooves him, when questioned by the assessor or when in court, to produce the plans, the records of account and the witnesses with which he can reasonably support his case with the preponderance of the evidence required by ORS 305.427.
 

 Defendant’s Order No. VL 78-441 is affirmed.
 
 [3]
 
 Defendant is awarded its costs and disbursements.
 

 [1]
 

 At trial, defendant’s witness, an appraiser for Jackson County, testified that the disqualified property covers 10.47 acres, not 8.47 acres. This discrepancy was caused by a clerical error, which has been corrected for tax years beginning January 1, 1978. Since the two additional acres were not disqualified until 1978, this court cannot consider whether those two acres should be disqualified for the 1977-1978 tax year.
 

 [2]
 

 No specific dollar amount of gross income was required under the farm use zoning and special assessment laws first adopted in 1963. In 1967, ORS 215.203(2)(b) was amended by Or Laws 1967, ch 386, § 1, to provide an eligibility requirement of gross income of $500 a year for three of the five preceding years. This provision was deleted in 1973 by Or Laws 1973, ch 503, § 3. The policy again changed in 1977, effective January 1, 1978, by adding a new section, ORS 308.372, requiring a gross income in three of the five preceding years of $500 to $2,000, depending on the acreage. Or Laws 1977, ch 339, § 1.
 

 [3]
 

 In finding that the 8.47 acres of pastureland are not entitled to farm use assessment status, this court follows older decisions that recognize that the total farm unit, as conceived by the taxpayer, may be fragmented under the farm use concept for tax purposes, so that a "pasture” can be assessed separately from an orchard. ORS 308.380(2).
 
 See Taylor v. Dept. of Rev.,
 
 6 OTR 496, 500 (1976);
 
 Kellems v. Dept. of Rev.,
 
 4 OTR 561, 564 (1971);
 
 Spooner v. Dept. of Rev.,
 
 4 OTR 66, 67-68 (1970).