# IN THE TAX COURT OF THE STATE OF OREGON

Edward W. AMERAL

*v.*

DEPARTMENT OF REVENUE

*and*

JACKSON COUNTY ASSESSOR,

*Intervenor*

(TC 3970)

W. V. Deatherage, Frohnmayer, Deatherage, Pratt et al, Medford, represented plaintiff (taxpayer).

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Steven P. Rinkle, Assistant County Counsel, Jackson County, waiving appearance at trial, represented intervenor (county).

Decision for defendant rendered December 3, 1996.

**CARL N. BYERS, Judge.**

Plaintiff (taxpayer) appeals the disqualification of his land from special farm use assessment for the 1995-96 tax year. Taxpayer claims that he leased the property during the spring of 1994 for the pasturing of horses. The Department of Revenue (department) contends that no horses were pastured on taxpayer's property that year. The department further contends that, even if taxpayer did lease the property, the horses were pleasure horses and did not qualify as farm use.

## FACTS

In 1988, taxpayer purchased the subject property, which is 197.7 acres zoned exclusive farm use (EFU), located near Medford. In 1990, taxpayer began leasing the property to a friend, Ronald C. Stubbs (Stubbs), each spring. Stubbs used the property to pasture four horses. Taxpayer testified that the property was only good for pasturing from April or May to June. Taxpayer received no money from Stubbs for this leasing activity; instead, they entered into a barter agreement. Stubbs sold taxpayer a copier and agreed to provide yearly maintenance in exchange for using taxpayer's land to pasture his horses. Taxpayer has fencing around most of his property. In one section, he allowed his neighbor to cut a section of the fence in order to move large equipment through it. When the horses were on the property, taxpayer would put an electric fence around his house and the neighbor's opening in the fence.

Stubbs testified that he used the horses in his ranching activities and for packing. During 1994, Stubbs owned six or seven cows. Stubbs leased taxpayer's land for extra pasture even though he leased his own property to others. On Stubbs' 1994 Schedule F, he listed $700 as farm income. This income was solely attributable to the money he received from the leasing of his own property.

In May 1994, the Jackson County Assessor's office conducted a review of taxpayer's property. An appraiser visited the property looking for agricultural activity. He looked for animals or evidence of animals being present such as trampled grass, animal tracks, animal droppings, and fencing. Based on his review of the property, he concluded that no animals were or had been present on the property during the year. He also photographed the property showing no electric

fence around the house. He did not ask any questions, claiming no one was home at that time.

In the beginning of 1995, the assessor's office sent taxpayer a farm use questionnaire asking taxpayer to justify the special assessment. Taxpayer testified that he had returned a similar questionnaire in 1993 indicating he leased his property as pasture for horses. This time, however, taxpayer went to the assessor's office and spoke with the residential field manager, Denny Nevin (Nevin). Taxpayer testified that he told Nevin he boarded horses on the property. Nevin testified that taxpayer never mentioned leasing the property for pasturing horses. Instead, Nevin testified that taxpayer did not want to lease the property because of liability concerns, and that taxpayer believed he was entitled to the special assessment because the property was in an EFU zone. In discussing with taxpayer the various options for the property's use, Nevin mentioned that a Christmas tree farm would qualify the property. Sometime after the meeting, taxpayer returned the questionnaire requesting that the property be rolled over to special assessment as designated forestland because he planned on developing a Christmas tree farm.

In June 1995, Nevin visited the property to confirm the nonfarm use and to determine whether the property qualified as forestland. He determined that 40 acres had sufficient growth to qualify for forestland but told taxpayer that the rest could not be rolled over until taxpayer developed a written plan for the planting and growing of trees.

## ISSUES

(1)  Did taxpayer lease his property for the pasturing of horses during the spring of 1994?

(2)  If so, does the leasing of the property for two or three months qualify as a farm use?

## ANALYSIS

■  In Tax Court cases, the plaintiff has the burden of proof. ORS 305.427. Here, taxpayer presented testimony of several people as to the use of his property. They testified to a continuing arrangement between taxpayer and Stubbs

regarding the boarding of Stubbs' horses during the spring of each year. No documentary evidence was submitted to support this testimony.

The department's evidence was insufficient. It submitted a picture of the property taken in May 1994, showing no electric fence on the property. The appraiser testified that he saw no evidence of farm use upon his inspection. However, the appraiser conducted only a cursory review of the property.[1] Furthermore, the appraiser failed to question taxpayer about the use while he was there. Although he testified no one was home at the time, the appraiser's photograph showed four vehicles in the driveway. Taxpayer testified someone had to be home because all four of his vehicles were shown in Exhibit B.

Despite taxpayer's lack of supporting documentary evidence, the court finds that taxpayer boarded four horses on his property for two to three months during 1994. The question then is whether this was a sufficient farm use to qualify for special assessment.

ORS 308.370(1)[2] is the special farm use assessment statute for property located in an EFU zone. It provides:

"Any land which is within a farm use zone * * *, and which is used exclusively for farm use as defined in ORS 215.203(2), shall, for purposes of assessment, be valued at its value for farm use and not at the real market value it would have if applied to other than farm use."

ORS 215.203(2)(a) defines farm use as follows:

"As used in this section, 'farm use' means *the current employment of land for the primary purpose of obtaining a profit in money* by raising, harvesting and selling crops or the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any

---

[1] Because the assessor's office only occasionally visits the property, it would seem that appraisers need to do more than a spot check of the property. If the appraiser had walked the fenceline of the property and inspected areas where the horses would typically stand, then his testimony would have carried more weight.

[2] All references to the Oregon Revised Statutes are to 1995.

other agricultural or horticultural use or animal husbandry or any combination thereof." (Emphasis added.)

■    In determining whether property qualifies for special assessment, the statutes focus on the use of the property, rather than the ownership. *Taylor v. Dept. of Rev.*, 6 OTR 496, 500 (1976). Therefore, it is not the activity of taxpayer, as lessor, that is relevant but the activity of Stubbs, as lessee. Stubbs must have used the land for the "primary purpose of obtaining a profit in money" through a specified activity. ORS 215.203(2)(a).

■    The court is not convinced that Stubbs used his horses for a qualified farm activity. The pasturing of pleasure horses is not a farm use. *See, e.g., Capsey v. Dept. of Rev.*, 294 Or 455, 657 P2d 680 (1983). Stubbs testified that he used the horses in his cattle business and for packing. Packing is a personal use, not a farm use. In addition, the court is doubtful that four horses are needed to run six cows.

■    Furthermore, Stubbs boarded his horses on taxpayer's land just two to three months out of the year. In discussing the degree of use that must be made of the farm property, this court has stated:

> "The great boon of tax relief to the bona fide farmer through the special exemption for farm use is not to be extended * * * unless the *day-to-day activities on the subject land* are principally and patently directed to achieving a profit in money through the farm use of the land." *Beddoe v. Dept. of Rev.*, 8 OTR 186, 190-91 (1979) (emphasis added).

Taxpayer's land was used only two to three months each year for farm use, which is insufficient to qualify for special assessment. The "day-to-day activities" rather than a few months each year must be directed at achieving a profit. Taxpayer complains that the property is unsuitable for anything else the rest of the year. That may be true, but it does not entitle taxpayer to special assessment. As noted in *Taylor*:

> "The special farm use assessment results in a diminution of property taxes on certain farm property and this requires additional tax contributions by all taxpayers to meet the property tax levies. Justification is found in the retention of farmland for agricultural production in spite of

intense economic competition to divert such land to alleg-
edly 'higher and better' uses. To continue the special farm
use in the case of land *unused or unusable* would defeat the
legislative policy." *Taylor*, 6 OTR at 501 (emphasis added).

The court finds that the primary use of the subject
property was not farm use. The department's Opinion and
Order No. 95-3804 is affirmed.