IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

HOLMES FAMILY TRUST,         )
                                      )
        Plaintiff,          )     TC-MD 250247N
                                        )
        v.                    )
                                      )
MULTNOMAH COUNTY ASSESSOR,    )
                                      )
        Defendant.       )   **DECISION**

Plaintiff appealed Defendant's denial of Plaintiff's Non-EFU Farm Special Assessment Requalification Application for property identified as Account R324841 (subject property) for the 2024-25 tax year. A trial was held on February 25, 2026, by remote means. Stephen Holmes (Holmes) appeared and testified on behalf of Plaintiff.[1] Louisa McIntyre, Assistant County Attorney, appeared on behalf of Defendant. Megan Swackhamer (Swackhamer), special programs supervisor, testified on behalf of Defendant. Plaintiff's Exhibits 1 to 10 and Defendant's Exhibits A to G were received as evidence.

By Order entered December 16, 2025, the court dismissed Plaintiff's appeal of the 2019-20 to 2023-24 tax years and Plaintiff's appeal of Defendant's 2024-25 disqualification notice. That Order is incorporated herein by reference.

I. STATEMENT OF FACTS

The subject property is 68.67 acres, of which Plaintiff requests that 67.21 acres be returned to non-EFU farm use special assessment. (Ptf's Ex 1 at 1; Ptf's Ex 3 at 5.) Holmes testified that the subject property includes fenced pasture, a 1,500-square foot barn, a running

---

[1] From 2019 through 2024, Stephen Holmes' father, Zane Holmes, conducted the horse pasturing activity on the subject property. (*See* Def's Ex B at 1-2.) Stephen Holmes testified that he now assists his elderly father with filling out paperwork for the property. (*See also* Def's Ex C at 1.)

stream, and a pumphouse with a trough. (*See also* Ptf's Ex 8; Def's Ex A at 9-23 (photos).) During the tax year at issue, the barn was not fully enclosed and appeared to have a leak in the roof. (Def's Ex A at 9-10.) Holmes testified that Plaintiff did not cultivate any specific plants or grasses on the subject property.

During the 2024-25 tax year and for the four preceding tax years (2019-20 through 2023-24), Plaintiff received income from two individuals who pastured two to six horses on the subject property. (*See* Ptf's Ex 3 at 5; Ptf's Ex 5.) Plaintiff did not have a written agreement with the two individuals, but each paid Plaintiff a flat monthly rate to pasture their horses. Holmes testified that Plaintiff provided the horses with safety (fencing), food (grass), shelter (the barn), and water. Plaintiff provided some hay for the horses in winter. (Ptf's Ex 3 at 1.) The horses' owners were responsible for additional care, such as grooming and training. The horses pastured at the subject property were "pleasure horses" – that is, they were not used to generate income to their owners. (Def's Ex A at 3-4.)

Defendant disqualified the subject property from farm use special assessment because Plaintiff failed to return the income questionnaire. (*See* Or Gtg Def's Mot to Dismiss in Part at 2.) Plaintiff applied to requalify the subject property for special assessment, and Defendant denied that application based on its determination that the subject property was not in farm use. (*Id.* at 1; *see also* Def's Ex C at 8.) Swackhamer testified that she did not think the subject property was used to "stable" horses because the barn did not appear adequate – it was open to the elements and had some debris on the floor. She would have expected to see a written boarding contract with terms, including supplemental feed in the winter. Swackhamer did not think the horses qualified as "livestock" because they were not raised for profit. Based on written correspondence with Plaintiff, Swackhamer believed that Plaintiff rented the subject

property to two individuals as tenant farmers.  (Def's Ex C at 5-6 (Plaintiff stated one individual "rented pasture"); Def's Ex E at 4 (letter from one individual stating she was "renting land" from Plaintiff).)  Swackhamer concluded that the subject property did not qualify for farm use special assessment because the tenant farmers did not intend to obtain a profit.  (Def's Ex C at 11.)

Plaintiff disagrees that it leased land, instead characterizing the arrangement as "stabling" or "pasture boarding" horses, which qualifies as farm use.  This appeal ensued.

## II.  ANALYSIS

The issue is whether the subject property qualifies for farm use special assessment for the 2024-25 tax year.[2]  "Farm use" is defined as "the current employment of land for the primary purpose of obtaining a profit in money by" doing one of several enumerated farm activities.  ORS 308A.056(1).[3]  The two possible farm activities here are:

> "(b) Feeding, breeding, managing or selling livestock, poultry, fur-bearing animals or honeybees or the produce thereof"; and

> "(d) Stabling or training equines, including but not limited to providing riding lessons, training clinics and schooling shows."

ORS 308A.056(1)(b), (d).  Before determining whether the subject property was employed for one of those farm activities, the court must determine a threshold question: Who must have "a primary purpose of obtaining a profit in money," Plaintiff or the individuals pasturing their horses?  ORS 308A.056(1).  As the party seeking affirmative relief, Plaintiff bears the burden of proof by a preponderance of the evidence.  ORS 305.427.

/ / /

---

[2] Because it is in a non-EFU zone, the subject property must also meet certain income requirements for three out of the five calendar years preceding the assessment date.  ORS 308A.071(2).  There is no dispute in this case that Plaintiff's use of the subject property met the applicable income requirements.

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2023.

A.      *Who Must Have Primary Purpose of Obtaining a Profit from the Subject Property?*

Oregon courts have long held that keeping one's own pleasure horses does not qualify for farm use special assessment. *See, e.g., Beddoe v. Dept. of Rev.*, 8 OTR 186 (1979) (denying farm use special assessment to pastureland where taxpayer kept two "pleasure horses" as a hobby). Courts historically extended that reasoning to deny special assessment where a taxpayer rented pastureland to others to graze or board pleasure horses. *See, e.g., Capsey v. Dept. of Rev.*, 294 Or 455, 657 P2d 680 (1983). The court in *Capsey* explained that it looks to the activity of the lessee to determine whether use of the land was to obtain a profit. *Id.* at 458, *citing Linfoot v. Dept. of Rev.*, 4 OTR 498 (1971); *see also Ameral v. Dept. of Rev.*, 14 OTR 56, 60 (1996) (denying special assessment to taxpayer who leased property to friend to pasture horses because "it is not the activity of taxpayer, as lessor, that is relevant but the activity of [the] lessee").

But the definition of "farm use" was expanded in 1993 and 1995[4] "to legislatively modify or overrule" the decision in *Capsey* by expressly stating that farm use "includes the current employment of land for the primary purpose of obtaining a profit in money by stabling or training equines including but not limited to providing riding lessons, training clinics and schooling shows." *Moore v. Coos County*, 144 Or App 195, 199, 925 P2d 927 (1996). Now farm use includes using land with the primary purpose of obtaining a profit in money by stabling or boarding horses, even "pleasure horses."

/ / /

---

[4] In 1993, the legislature expanded the definition of farm use to include "the current employment of land for the primary purpose of obtaining a profit in money by stabling or training equines." Or Laws 1993, ch 704, § 1. In 1995, it added the text "including but not limited to providing riding lessons, training clinics and schooling shows." Or Laws 1995, ch 211, §1. During the hearing on HB 2934 before the House Committee on Natural Resources, Representative Markham asked why horses were categorized separately from "livestock." Tape Recording, House Committee on Natural Resources, Subcommittee on Environment and Energy, HB 2934, Apr 12, 1993, Tape 65, Side A (statement of Rep Bill Markham). Don Schellenberg of the Oregon Farm Bureau responded that he "suspect[ed] that land-use laws have caused the problem." *Id.* (statement of Don Schellenberg).

Consistent with those statutory changes, the Department of Revenue's Farm Use Manual confirms that running a "business of pasturing of others' pleasure horses for profit qualifies as the feeding of livestock under ORS 308A.056(1)(b)." 2022 Farm Use Manual at 2-3; *see also id.* at 6-28. This court has granted farm use special assessment to land used for a business boarding and training five to ten horses where taxpayer satisfied income requirements for non-EFU special assessment. *Colbert v. Multnomah County Assessor*, TC-MD 021126D, 2003 WL 22319432 (Or Tax M Div, Sept 30, 2003). The court is persuaded that, under current law, a business pasturing others' pleasure horses may qualify land for special assessment.

B.       *Whether Plaintiff was Stabling Equines or Feeding Livestock to Obtain a Profit*

During the tax year at issue and for the preceding five years, Plaintiff engaged in an activity of pasturing others' pleasure horses and received sufficient income from that activity to satisfy the gross income requirements for non-EFU special assessment. Defendant disputes that Plaintiff's activity qualified as either "stabling" horses or "feeding livestock." Defendant also appears to question whether Plaintiff's activity was a "for the primary purpose of obtaining a profit in money" because it lacked business formalities such as written contracts.

With respect to stabling, Defendant argues that Plaintiff's activity does not qualify because the subject property did not include a suitable building. The subject barn was open to the elements on its sides and had a leak in its roof. The Farm Use Manual tends to support Defendant's definition, stating that "[s]tabling connotes the presence of a building, stall or structure that provides shelter or housing for horses." Farm Use Manual at 2-3.

However, even if the subject barn does not qualify as a stable, the Farm Use Manual states that "[b]oarding (or care) can be provided in either a pasture or stable setting. * * * If the boarding involves care in a pasture setting, it can qualify as feeding of livestock." Farm Use

Manual at 6-28. Defendant argues that the horses pastured on the subject property are not "livestock" because they are not kept for profit. But that definition is not found in the statute or supported by the Farm Use Manual. Pasture boarding others' horses is a qualifying farm use, provided other statutory requirements are satisfied.

Defendant points to Plaintiff's lack of business formalities, such as written boarding contracts. Presumably this relates to whether Plaintiff's primary purpose was to obtain a profit in money. This court has denied special assessment where a taxpayer's boarding activity was too minimal to qualify. *See, e.g., Ameral*, 14 OTR at 60 (taxpayer leased property to friend through barter agreement and friend boarded four horses for a few months each year); *Meyer v. Wasco County Assessor*, TC-MD 050682E, 2006 WL 212105 (Or Tax M Div, Jan 17, 2006) (taxpayer boarded a single horse for two months); *Stacy v. Marion County Assessor*, TC-MD 070481C, 2008 WL 352323 (Or Tax M Div, Jan 31, 2008) (taxpayer claimed to board two horses for family members but court was doubtful because no evidence of horses on site or payments made, and incomplete fencing around pastures). On the other hand, this court has granted special assessment to a horse boarding and training activity involving five to ten horses where gross income requirements were satisfied. *Colbert*, 2003 WL 22319432 at *1.

Here, Plaintiff pasture boarded two to six horses belonging to two unrelated individuals and collected sufficient gross income to meet the requirements for non-EFU farm use special assessment. No evidence indicates that the activity was intermittent (*e.g.*, only a few months out of the year) or that Plaintiff did not, in fact, collect the payments reported on its gross income questionnaire and its Schedule F. Accordingly, the court concludes that Plaintiff used the subject property to feed livestock with a primary purpose of obtaining a profit in money.

/ / /

III.  CONCLUSION

Upon careful consideration, the court concludes that, for the 2024-25 tax year, Plaintiff is entitled to farm use special assessment because it used the subject property to feed livestock with a primary purpose of obtaining a profit in money.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.

_____

***To appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court. Appeals are accepted by electronic filing; by mail at 1163 State Street, Salem, OR 97301-2563; and by hand delivery to 1241 State Street, Salem, OR, Floor 4R.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.***

***This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on May 8, 2026.***